```
                IN THE UNITED STATES DISTRICT COURT

                        DISTRICT OF ARIZONA


UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
                             )
vs.                          )    CR-11-3745-TUC-DCB
                             )
                             )
EUGENE PATTERSON,            )
                             )
            Defendant.       )    Tucson, Arizona
_____)    November 19, 2012




                BEFORE HONORABLE DAVID C. BURY
                 UNITED STATES DISTRICT JUDGE
                        405 W. CONGRESS
                     TUCSON, ARIZONA 85701


                        CHANGE OF PLEA


                    A P P E A R A N C E S

ON BEHALF OF THE GOVERNMENT:      ANN DEMARAIS
                                  ASSISTANT U.S. ATTORNEY

ON BEHALF OF THE DEFENDANT:       MATTHEW DAVIDSON
                                  ATTORNEY AT LAW




                   CHRIS WALLACE, RPR, CRR
                  405 W. CONGRESS, SUITE 1500
                     TUCSON, ARIZONA 85701
                        (520)205-4268

   Proceedings prepared by computerized realtime translation.
```

|    |                                                                    |
|----|--------------------------------------------------------------------|
| 1  |                    P R O C E E D I N G S                          |
| 2  |         THE CLERK:  In criminal matter are 2011-3745, United       |
| 3  | States of America versus Eugene Patterson, on for bench trial.     |
| 4  |         MS. DEMARAIS:  Ann DeMarais for the government.            |
| 5  |         MR. DAVIDSON:  Matthew Davidson for Mr. Patterson,         |
| 6  | present and in custody.                                            |
| 7  |         THE COURT:  It is the time set for a bench trial, but     |
| 8  | I'm presented here with a plea agreement that appears to be        |
| 9  | signed by Mr. Patterson and you, Mr. Davidson, as well as the      |
| 10 | government.                                                        |
| 11 |         So is it proposed that Mr. Patterson change his plea       |
| 12 | instead of going to trial?                                         |
| 13 |         MR. DAVIDSON:  It is, Judge.  The government offered       |
| 14 | him a six-month deal in exchange for his guilty plea and he        |
| 15 | intends to accept that.                                            |
| 16 |         THE COURT:  Isn't it required to be consecutive?          |
| 17 |         MS. DEMARAIS:  Yes, it has to be consecutive, Your         |
| 18 | Honor.                                                             |
| 19 |         THE COURT:  Mr. Patterson, I'm told that you want to       |
| 20 | change your plea from not guilty and having this trial to the      |
| 21 | court, changing your plea to guilty.  Am I right?                  |
| 22 |         THE DEFENDANT:  Yes, sir, Your Honor.                      |
| 23 |         THE COURT:  That requires me to ask you a number of        |
| 24 | questions before I can accept a plea of guilty.  They're           |
| 25 | designed to make sure that you understand what you're doing,       |

1  what you're giving up, what rights you're giving up, and that
2  you're doing this voluntarily and intelligently, and so I'm
3  going to ask you a number of questions.
4           Now, the questions that I ask you are under oath.
5           I'm going to have you placed under oath momentarily,
6  so all the responses you give are under oath.  You need to know
7  that, and if you make any false statement under oath, of
8  course, you could be prosecuted for perjury or making a false
9  statement under oath.
10          At any time during this process, Mr. Patterson, you
11 can confer with Mr. Davidson before you answer any of my
12 questions.  Also, I want to make sure that you understand my
13 questions, and so you should feel free to let me know if you
14 have a problem understanding any question I ask you, and I will
15 try to rephrase it or you can talk to Mr. Davidson.
16          THE DEFENDANT:  Yes, sir, Your Honor.
17          THE COURT:  Are you willing to proceed?
18          THE DEFENDANT:  Yes, sir, Your Honor.
19          THE COURT:  You are confined to a wheel chair, aren't
20 you?
21          THE DEFENDANT:  Yes, sir, Your Honor.
22          THE COURT:  You can remain seated.
23          Raise your right hand and we will give you an oath.
24          (Defendant sworn.)
25          THE COURT:  Mr. Patterson, thank you.  Your full

legal name is Eugene Patterson?

THE DEFENDANT: That is not my full legal name. The full legal name is Eugene Phillip Patterson.

THE COURT: Thank you. And you are how old, sir?

THE DEFENDANT: 65.

THE COURT: And what is the extent of your education? How far did you get in school?

THE DEFENDANT: I have a college degree. I have two college degrees.

THE COURT: What are those in?

THE DEFENDANT: One is associate degree from DeKalb University in general education, and the other is a BA in business administration, and I received my GED in the army once I came back from Vietnam, sir.

THE COURT: Good. You seem to feel good today.

Have you in the last 48 hours had any mind altering substance? Have you had any drug or medication that might affect your ability to think clearly this afternoon, or alcohol or any type of a substance within the last 48 hours that might affect your ability to think clearly?

THE DEFENDANT: Narcotics, no; psychotropic medication that helps me, yes.

THE COURT: You have been treated for a psychiatric or emotional condition?

THE DEFENDANT: Yes, sir, but I am all right.

            THE COURT:  When you say you are all right, you are required or you should take medication?
            THE DEFENDANT:  Yes, sir.
            THE COURT:  And the name of that medication is what?
            THE DEFENDANT:  I can't pronounce the name.  One is Cogentin to stop me from having side effects and the other one is for the bipolar and just the -- it's schizophrenic because of the head injury in Vietnam and that helps me.  They have been giving that to me, different drugs in the VA hospital, et cetera, so I'm all right.  I got a good mind.  I'm all right so far, a good mind understanding.
            I'm all right.
            THE COURT:  And you have been taking the medications as required or suggested?
            THE DEFENDANT:  Yes, sir, I had my dosage last night, sir, they give them to me at night, Your Honorable Judge.
            THE COURT:  They help you and when you're taking those medications you're thinking clearly; right?
            THE DEFENDANT:  Yes, sir.
            THE COURT:  What happens to you when you don't take the medication?
            THE DEFENDANT:  Well, from what the VA hospital and the psychiatrists and psychologists say over the years in helping me recognize that once I get to a certain point, that certain point I don't recognize my behavior, but when I do get

1  to a certain point and somebody say:  Man, like you ain't
2  right, this, that and the other, I take heed to it real
3  seriously, and that's like a red flag, and that red flag along
4  with -- I could somewhat like detect that:  Man, you ain't
5  right and in the penitentiary, a person won't let you -- know
6  you right when he knock you up side your head, then you know
7  you ain't right.  So at that point in time, that's when I go to
8  the psychiatrist and the psychologist and I say look, man,
9  things ain't right, increase the medication.
10         THE COURT:  But right now you think you're right?
11         THE DEFENDANT:  Positively; yes, sir, Your Honor.
12         THE COURT:  I don't remember about whether a
13  psychological evaluation was done through the court or what.
14         MS. DEMARAIS:  There was.
15         MR. DAVIDSON:  There was, Judge.
16         THE COURT:  And following that report he was found to
17  be competent, and -- but he was required to take this
18  medication or should take this medication to maintain his
19  competency.  Am I right about that?
20         MS. DEMARAIS:  Yes, Your Honor.
21         THE COURT:  Today, this afternoon, he sounds really
22  good to me.
23         Is there any reason either counsel would doubt his
24  competency to go ahead with his plea colloquy?
25         MS. DEMARAIS:  No, Your Honor, and if you recall he

was also allowed at one point to represent himself.

MR. DAVIDSON: I don't, Your Honor. When I went last week to visit with him prior to the trial in preparation, my concern it was kind of in reference to his hunger strike. I don't see -- I don't know if you had seen that e-mail where he had initiated a hunger strike and he wasn't eating, so I was concerned whether he physically was able to proceed with the trial or where his mental frame of mind was. But I was satisfied after meeting with him the latter part of last week.

THE COURT: That's right, he was representing himself for a time and then Mr. Davidson got back on board. I shouldn't be letting him represent himself if he isn't competent; right?

MS. DEMARAIS: Correct, Your Honor.

THE COURT: All right, Mr. Patterson.

Here I am presented with this written plea agreement.

It's six pages long, appears to have Mr. Davidson's signature on page six along with the government, but then on page five appears to be your signature with today's date.

Is that your signature on page five of this agreement?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Before you signed this -- you just signed it today. Before you signed it, did you have an opportunity to

```
 1   either read it in its entirety or to have it explained to you
 2   in detail by your attorney?
 3              THE DEFENDANT:  Yes, sir, Your Honor.
 4              THE COURT:  Do you think that you understand the
 5   terms and conditions of your plea agreement?
 6              THE DEFENDANT:  Yes, sir, Your Honor.
 7              THE COURT:  Have any promises been made to you by
 8   anyone regarding your change of plea or your sentence in this
 9   case, other than what is contained in this written plea
10   agreement?
11              THE DEFENDANT:  No, sir, just what is contained in
12   the plea agreement, the contents.
13              THE COURT:  Did anybody force you or threaten you or
14   coerce you in any way into entering into this plea agreement?
15              THE DEFENDANT:  No, sir.
16              THE COURT:  Or in changing your plea in the case?
17              THE DEFENDANT:  No, sir.
18              THE COURT:  You're doing it voluntarily because you
19   think it's in your best interest to do so?
20              THE DEFENDANT:  Yes, sir, Your Honor.
21              THE COURT:  Now, the plea agreement contemplates that
22   you plead guilty to -- I guess it is a one-count indictment.  I
23   don't know why it says Count 1 on the first page if it is a
24   one-count indictment, but it is a single-count indictment, and
25   it charges you with assault on a federal officer being Officer
```

1  Vickie Patrika, an employee of the United States of America,
2  and I need to make sure that you understand the maximum
3  penalties that are associated with this crime.  That allegation
4  is a violation of 18 U.S.C. Section 111(a)(1), and it has a
5  maximum term of punishment of incarceration of eight years and
6  a fine of not more than 250,000 dollars, a supervised release
7  term not to exceed three years, and a special assessment of 100
8  dollars.
9            Do you understand the maximum penalties associated
10 with this offense?
11           THE DEFENDANT:  Yes, sir, Your Honor.
12           THE COURT:  Now, also in this plea agreement, there
13 is a provision here on page 2 that you agree with the
14 government that if your plea agreement is accepted by the court
15 and if you get the sentence that is in your plea agreement,
16 that is this stipulated six months to run consecutive to
17 your -- the term you are now serving, that if that is your
18 sentence in the case, you agree with the government to waive
19 your right of appeal from the sentence and judgment of the
20 court, and also to waive what we call collateral attack of the
21 sentence and judgment, that is you are waiving your right to
22 file any motion to move to set aside the sentence or reduce it.
23           Do you understand all that?
24           THE DEFENDANT:  Yes, sir, Your Honor.
25           THE COURT:  So you understand also that once you

1  serve the term of imprisonment, you are also subject to serving
2  a term of supervised release once you are released from
3  custody.
4          THE DEFENDANT:  Yes, sir, Your Honor.
5          THE COURT:  Now, you understand I'm not making a
6  decision today.  I'm making a decision whether or not to accept
7  your guilty plea.  I'm not making a decision as to whether or
8  not to accept your plea agreement, and your plea agreement is a
9  contract between you and the government; it's not a contract
10 with the court.  So the court does not have to accept your plea
11 agreement.
12         I can't accept it today because I need to know more
13 about you and I need to know more about this case.
14         So you understand it's not binding on the court.  Do
15 you understand that?
16         THE DEFENDANT:  Yes, sir, Your Honor.
17         THE COURT:  Now, if, though, I should later decide to
18 reject your plea agreement and not accept it, I would be giving
19 you the option of withdrawing your guilty plea.
20         THE DEFENDANT:  Yes, sir, Your Honor.
21         THE COURT:  However if I accept your guilty plea
22 today and I accept your plea agreement, you can't just change
23 your mind and withdraw your guilty plea unless you show some
24 real good cause, just cause to do so.
25         Once your guilty plea is accepted today, you can't

1  change your mind.  That's what I'm telling you.
2              THE DEFENDANT:  Yes, sir, Your Honor.
3              THE COURT:  You understand, also, that this -- if
4  your plea is accepted and you're sentenced and convicted in
5  this case, that becomes part of your criminal record, and that
6  could affect you in the future, that is this conviction could
7  be used in the future to affect and maybe extend or make longer
8  any sentence that you may get in the future for some future
9  offense.
10             Understand that?
11             THE DEFENDANT:  Yes, sir, Your Honor.
12             THE COURT:  Now, you understand that instead of
13 pleading guilty this afternoon, you could go ahead with a trial
14 of this case, and it is a trial to the court where I would be
15 making the decision factually as to whether or not you were
16 guilty.  At all times, Mr. Patterson, during this bench trial
17 you would be presumed to be innocent unless and until the
18 government proved you guilty beyond a reasonable doubt.
19             The government would have to prove that, prove every
20 element of the offense you're charged with beyond a reasonable
21 doubt, and until they do that you're presumed to be innocent.
22             Also at this bench trial, you wouldn't have to prove
23 everything.  The defendant doesn't have to prove anything; the
24 government has to prove everything.
25             You would not be obligated to testify; you have a

constitutional right to remain silent and not testify, not say anything. You don't have to present any evidence.

Do you understand all that?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: You also, though, at this bench trial would have a right to testify if you chose to do so. Your testimony would be considered the same as any other witness who testified in the case.

You would have the right, also, to compel the attendance of witnesses in this trial by the issuance of court subpoena; you would have the right through your attorney, Mr. Davidson, to confront the witnesses who testify against you; and the way that is done is that the lawyer cross examines those witnesses, but you would be entitled to assist your lawyer in cross examining those witnesses and thereby confront them with regard to any testimony they may offer against you.

Besides that, you would even have the right to call witnesses on your own behalf by the use of that subpoena power.

Do you understand all those rights?

THE DEFENDANT: Yes, sir, Your Honorable Judge; yes, sir.

THE COURT: You understand that if I accept your plea, you're giving up those rights and you wouldn't have a trial and the only thing that would happen is that I would accept your plea, I would set this case down for a sentencing,

1  I would order the probation department to prepare a presentence
2  report and the next time I see you would be at a sentencing
3  hearing.
4      Understand that?
5      THE DEFENDANT:  May I make a statement?
6      THE COURT:  Sure.
7      THE DEFENDANT:  Is it possible that I can ask my
8  attorney to expedite the presentence investigation report.  If
9  I am using -- for lack of a better word to expedite it, to
10 speed it up.  I'm not trying to be arrogant to the court, it is
11 just to expedite it, to get it over with, because I know you
12 got other things to do, to speed it up, if that is possible,
13 please.
14      THE COURT:  It is possible to make that request.
15 Actually, Mr. Patterson, we have so many cases in this
16 district, so many criminal cases, the probation department is
17 overburdened and I have to give them an opportunity to do their
18 work, because I'm not going to sentence you without hearing
19 from them, because I need to know more about you.  So I propose
20 to sentence you sometime in January, and that is pretty quick,
21 actually.
22      Now, I was going to mention to you when I said that
23 the next time I would see you would be at a sentencing hearing.
24      I can hear from you and the way that happens is that
25 your lawyer will get a copy of this presentence report, and

he'll discuss it with you, if not show it to you, and you certainly have the opportunity and the right to file any sentencing memorandum through Mr. Davidson, or any objections to that presentence report. All of that happens before your sentencing hearing.

But I have no intention to put your sentencing off. In fact I will do it as soon as I can get the presentence report but with one exception. Once we get the presentence report, then the lawyers -- both yours and the government -- have to have some time in order to make any objections to the presentence report.

Do you understand that?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: And I'm thinking that process will take until sometime in January, particularly when we have the holidays.

THE DEFENDANT: Yes, sir.

THE COURT: That is the best I can do in terms of when we do this.

THE DEFENDANT: I understand, thank you.

THE COURT: Now, this plea agreement that you have provides on page 2 that if your plea agreement is accepted, and if you are a Criminal History III, that you would get a sentence of six months, and my recall of what the law is is that that six months, by law, must be consecutive to, or added

```
 1    to the sentence you are currently serving.
 2              Do you understand that?
 3              THE DEFENDANT:  Yes, sir, Your Honor.
 4              THE COURT:  Did I miss any rights?
 5              MR. DAVIDSON:  I don't believe so
 6              THE COURT:  I think he is competent; I think he is
 7    voluntary; I think he understands that he is waiving his
 8    rights.  I just didn't know if I forgot something.
 9              Now, knowing you're making all these waivers of your
10    rights, and I think you understand the consequences of pleading
11    guilty, do you want to go ahead with your change of plea?
12              THE DEFENDANT:  No, I will stick to the guilty
13    plea.
14              THE COURT:  We haven't gotten that far yet.
15              You are willing to go ahead and plead guilty in the
16    case?
17              THE DEFENDANT:  I plead guilty.
18              THE COURT:  I need to make sure you understand what
19    the charge is.  Listen to this.  I am going to read the
20    indictment to you and then I am going to ask you, one, if you
21    understand the charge against you; and, two, whether you plead
22    guilty or not guilty to that charge.
23              So this indictment charges you, Mr. Patterson, with
24    on or about July 26th, 2011, at or near Tucson in the District
25    of Arizona, Eugene Patterson did intentionally and forcibly
```

1  assault United States Bureau of Prisons employee disciplinary
2  hearing officer Vickie Patrika, an employee of the United
3  States or any agent thereof while Vickie Patrika was engaged in
4  the performance of her official duties, making physical contact
5  with Vickie Patrika by spitting on her face in violation of
6  Title 18 United States Code Section 111(a).
7           Now, do you think that you understand the charge made
8  against you?
9           THE DEFENDANT:  Yes, sir.
10          THE COURT:  How do you plead to that charge, guilty
11 or not guilty?
12          THE DEFENDANT:  Guilty, sir.
13          THE COURT:  Now, do you understand that the elements
14 of this offense and what the government would have to prove
15 beyond a reasonable doubt is that, first, there was a forcible
16 assault; second, that you committed that assault while
17 disciplinary hearing officer Vickie Patrika was engaged in the
18 performance of her official duties; and, third, that you made
19 physical contact with that victim by spitting on her face.
20          Do you understand those are the elements of this
21 offense that the government would have to prove beyond a
22 reasonable doubt before you would be found guilty?
23          THE DEFENDANT:  Yes, sir, I do understand.
24          THE COURT:  Ms. DeMarais, maybe you can do a factual
25 basis, but Mr. Patterson, we are almost done here, but I need

```
 1   to make sure that you admit to certain facts that would support
 2   your being guilty of the offense; all right.
 3            It's not good enough so far just for you to know what
 4   the charge is.  I have to have some facts that you admit that
 5   would support your being guilty, and I'm going to have
 6   Ms. DeMarais do that hopefully briefly, and I would ask you,
 7   Mr. Patterson, to listen carefully, because once she finishes,
 8   I'm going to ask you if you admit those facts to be true; okay?
 9            THE DEFENDANT:  Yes, sir, Your Honor.
10            THE COURT:  Ms. DeMarais, if you would do this.
11            MS. DEMARAIS:  If this were to proceed to trial the
12   government would be able to show the following facts beyond a
13   reasonable doubt:  That on or about September 26th, 2011, at or
14   near Tucson in the District of Arizona, the defendant
15   intentionally and forcibly assaulted United States Penitentiary
16   disciplinary hearing officer Vickie Patrika by spitting in her
17   face.  She was an employee of the United States at that time;
18   she was engaged in the performance of her official duties.
19   They were going through a disciplinary hearing and she ruled
20   that he was to receive a fourteen-day sanction in the SHU Unit,
21   Special Housing Unit, for stealing a piece of chicken, and he
22   got mad and spat in her face.
23            THE COURT:  Do you admit those facts to be true,
24   Mr. Patterson?
25            THE DEFENDANT:  Yes, sir, Your Honor.
```

```
 1              THE COURT:  Counsel, I know you're satisfied with the
 2    factual basis, but is there any other issue before I accept his
 3    change of plea, any legal reason why I should not accept the
 4    plea or any deficit in this plea colloquy that might be a
 5    reason for me not accepting the plea?
 6              MS. DEMARAIS:  No, Your Honor.
 7              MR. DAVIDSON:  There is not.
 8              THE COURT:  I find there is a factual basis for the
 9    plea of guilty in this case.  I find that it is entered into
10    knowingly, voluntarily and intelligently, and I find
11    Mr. Patterson is guilty of a violation of Title 18 United
12    States Code Section 111(a) being an assault upon a federal
13    officer who was in the course of her duties as a federal
14    officer.
15              I will order that a presentence report be prepared by
16    probation with a copy to counsel in accordance with Rule 32.
17              I will vacate the trial date of today's date and set
18    this matter for sentencing on January 28, 2013 at 10:30 a.m..
19              Anything further?
20              MR. DAVIDSON:  Judge, I have one small matter.  As
21    the court knows Mr. Patterson is at FCC, he is confined to a
22    wheel chair, he is a paraplegic.  He asked me to ask you if he
23    could be moved to his original place of origin, which was FCC
24    in Tucson, he would appreciate that.  The primary reason is he
25    says in his current facility, he cannot take a shower or a
```

1  bath, so what he has been forced to do is use the toilet to
2  clean himself and he is asking the court for some assistance in
3  that area.
4              THE COURT:  Gross, and he is now at FCC Phoenix?
5              MR. DAVIDSON:  FCC Florence.
6              THE COURT:  And he could better attend to his
7  hygienic needs if he was at FCI Tucson.
8              MR. DAVIDSON:  Which is where he came from.
9              THE COURT:  Well, he's in marshal custody, and I'm
10 not going to push the marshals around in terms of doing their
11 duties, but I would make that request if there are some issues
12 regarding Mr. Patterson's hygiene, and he cannot properly clean
13 himself and bathe, that that be attended to, and if necessary
14 his custody be transferred to FCI Tucson where he can attend to
15 those issues.
16             Now, I don't know what the problem is, but the
17 Marshals will check into that and see if there is a problem
18 with that, and if it cannot be taken care of at FCC Florence,
19 then I would request that they move him to where he can take
20 care of those issues.
21             MR. DAVIDSON:  Thank you, Judge.
22             THE COURT:  Mr. Patterson, thank you, sir, for your
23 courtesies and I will see you on January 28th.
24             THE DEFENDANT:  Thank you, Your Honor; yes, sir.
25

C E R T I F I C A T E

    I Chris Wallace, certify that I took the shorthand notes in the foregoing matter; that the same was transcribed under my direction; that the preceding pages of 19 typewritten matter are a true, accurate and complete transcript of all the matters adduced, to the best of my skill and ability.

    s/Chris Wallace
    _____
    CHRIS WALLACE, RPR, CRR

Dated: February 10, 2013